Good morning, judges of the Ninth Circuit. My name is Chris Gelner. I represent the plaintiffs' appellants in this case who are the widow and minor children of Terry Jones, who was a 33-year-old black man who was arrested for driving under the influence in Las Vegas, Nevada on November 21st, 1998, taken to the Clark County Detention Center, and then died there as a result of a forced blood draw, as a result of being pinned to the floor by five corrections officers while his hands were cuffed behind his back. And, Mr. Gelner, I think you can assume that we've read the briefs. We're very familiar with the factual and procedural history of the case, if it'll save you some time. All right. And we believe that as a result of numerous errors by the district court, both on rulings before the trial and on evidentiary matters before the trial, that the plaintiffs were not provided a fair trial. They were not able to present their case. And in particular, these rulings concerning the prior arrest and criminal records of Mr. Jones were most prejudicial and made him look like a career criminal. If the district court ruled that you had opened the door through your presentation of your plaintiff's case-in-chief, don't we review his decision to admit that evidence under an abuse of discretion standard? That is correct. That would be the standard. We don't believe that we opened the door. But if we did open the door by presenting testimony that he was a good father, that he was a good worker on the job, that type of thing, I think these types of events are just highly prejudicial. And there's other ways of doing this. I mean, if they want to, if the character of the gentleman is in dispute because maybe his character is relevant to damages or they want to show that the character that we brought out was not the character that he really had, there's other ways of doing that. You can bring in character evidence under Rule 405 of the Federal Rules of Evidence, which would be opinion or reputation evidence. There's also, under Rule 608, if a witness is testifying, and there were witnesses that testified, family members, they could ask them on cross-examination about certain events. But in this particular case, not only were they asked about certain events, but the records themselves were admitted into evidence. And in particular, it was Exhibit 571 and 572. And these aren't convictions. What these are are police reports. And they're just full of hearsay, and they're highly prejudicial. Most of the offenses which were included in these records, Mr. Jones wasn't even convicted of. There were felony arrests for supposedly stealing a cab, resisting arrest, attempted robbery in one incident, which was the oldest incident, which was almost ten years old. There was no conviction of those offenses. I take it the purpose for introducing from the defense point of view was to show that the decedent was a fighter when he was arrested. Is that it? I would suspect so. Basically, what they were trying to do is show that on the event in question, he was the cause of these injuries, not the corrections officer. Because he had a pattern of resisting whenever he was arrested. However, if you understand something from the trial, we never contended that he didn't resist. We never contended that. We admitted that from the beginning. Unfortunately, I had to try to prove the case through the corrections officers, because Mr. Jones was resisting. We had to go with that. I have no idea exactly what happened there. But we do know that he sustained some very severe injuries. An Arab pathologist said it was due to severe blunt force trauma to his face. It could have been kicks. You had a couple of corrections officers standing in the doorway. We had a couple of corrections officers standing in the doorway. They were disputing the accuracy of what they saw. Those were all issues that the jury had to resolve with regard to the credibility of what happened, weren't they? Those were issues that the jury had to decide. But when you look at it, basically, we had a case where the jury had to determine, was Mr. Devaney telling the truth, or were the corrections officers right in what they saw? Mr. Devaney came out looking like a choir boy, because we couldn't get in any of his incidents of past disciplinary actions for using force and lying about it. Yet, Mr. Jones, who was the person that we're saying we want the family to be able to recover damages for, he's shown to be a terrible man who has engaged in these types of acts in the past. And there was no proof that he had committed these acts other than police reports. There was a few convictions, I will admit that, in those records. But these were police reports for the most part. They were highly prejudicial. But 608 isn't limited to convictions. It does permit specific incidents of conduct. But as you've pointed out, it does say limited to for impeachment purposes. You can't prove it extrinsically. Right. And if you look at those reports, those reports are highly inflammatory. It was one thing for the judge to allow the defense to ask the family members about what they knew about certain incidents. That's one thing. But then letting in the records at the last minute. And we argued very vehemently that these records were highly prejudicial. And the judge never really evaluated the records on the prejudice issue. Did he redact any of them? No, he did not redact any of them. He excluded any of the offered records? He let all 571 in. 572, that exhibit included more incidents. He let in four incidents in 572. So he didn't just let everything. He did exclude some of the... He did. Yes, he did. He did exclude some. But he let in the worst ones. I mean, you can say that these were closer to the incident because they involved intoxication. They involved, you know, fighting or that type of thing. But these are the types that were most prejudicial. And made the jury, you know, look at this gentleman and say, regardless, well, maybe Mr. Devaney kicked him in the head, maybe he did. But this guy doesn't deserve our protection in any way, shape or form because he's not a credit to his family. How can we give damages to his family for this? And as a result, I think it had an impact on them finding that Mr. Devaney did not commit any acts of excessive force. And they didn't go any further than that. And then on the one hand of letting in all these records against Mr... About Mr. Jones, the judge did not allow anything regarding Mr. Devaney. And Mr. Devaney has a very checkered disciplinary history with the Clark County Detention Center in Las Vegas Metropolitan Police Department. He... We just found out about one incident after the case was tried that actually happened before the case where he had taken checks that had belonged to his deceased... Counsel, is that in the record or are you now... No, that's not in the record. Well, let's confine the argument to what's in the record. And also, Mr. Devaney had been disciplined for this very incident. However, the way the evidence came out at trial, it looked like that the Metropolitan Police Department supported his version of the facts. His version of the facts was this. All I did is use my feet to control Mr. Jones's head to prevent him from biting me and other corrections officers. I did not kick him in the head. I did not stand on his head. Although it could have looked that way to people watching it from the doorway. I mean, that was basically his contention. And when he testified to that, we should have been allowed to introduce evidence showing that he had committed these... That he committed acts of force against inmates in the past and lied about it. And that, I think, was very essential to our case. And I think it would rebut his testimony that he only used his foot for defensive purposes rather than as a weapon. And then another problem we had in the case is that, like, the day, two days before the evidence was taken, the judge excluded evidence regarding this prisoner restraint chair, which was essential. Well, why doesn't that fall under the subsequent remedial rule under whatever it is, 408, I guess. Is there a 407? Why doesn't it? Yeah, why doesn't 407 support the district court's evidentiary rule? It doesn't support the district court's evidentiary rule because the prisoner restraint chair was on the premises of the jail prior to this incident. There was an SOP, in effect, a standard operating procedure that the chair could be used. There was a lesson plan that had been drafted months before this incident, but the chair was not used or not available for use because none of the corrections officers had been trained on it. And they subsequently were, right? They subsequently were. And you wanted to introduce the fact that there were subsequent measures taken that, had they been in effect at that time, would have eliminated it. But this SOP was in effect. If the SOP says the chair is available, it can be used. I'm still having a hard time understanding why, and I'm reading the language of the rule, evidence of the subsequent measures is not admissible to prove negligence. And that seems to me that's exactly what you were trying to do. Not only that, Your Honor, but... Was that yes? That's what I was... No, that's what you read, but I still feel it's different. You read it correctly. All right. But I think... I try to be accurate. I know, but you are accurate. But it's different because the SOP was in effect, okay? There was some training, allegedly. Evidence indicated that it only took two hours to train somebody on how to use this chair. I mean, yet the SOP had been in effect for months. Why didn't they train anybody? So it goes to the failure to train claim. And also, throughout the proceedings, they kept implying that we had no choice but to throw this man on the floor and try to restrain him so that we could... So he would be still enough so that we could get a needle in his arm. However, this restraint chair was available. It was an alternative. We could not... We were not permitted to ask them about that. So their implication that there wasn't other alternatives was not an accurate one. And the jury got the impression that there were no alternatives other than perhaps putting this man in an isolation cell or putting him on a gurney. We tried to get evidence of the gurney out just because the judge wouldn't let us. I say anything about the restraint chair, which was an alternative, and it had been used by other police forces. It was available in this particular case, and it should have been used. We feel that their defense that it wasn't used because they hadn't trained was just an unjustified excuse. Also, our police practices expert, Mr. D.P. Van Vlerakam, was not allowed to testify on the ultimate issue because the judge felt that that was not... Testimony on ultimate issues is reserved for the province of the jury. However, Nevada... Excuse me, Federal Rule of Evidence 704A, I believe, allows testimony on the ultimate issue if it's otherwise admissible. In this case, the judge did not allow Mr. Van Vlerakam to testify on whether the corrections officers committed acts of excessive force against Mr. Jones, whether the failure to train constituted deliberate indifference to Mr. Jones's constitutionally protected rights, and also whether that was the moving force in his death. And the argument by the other side in the brief is that these were issues of credibility, which the judge was excluding. But I think if you look at the record, you'll see he was excluding them because he felt that they were opinions on the ultimate issue. In this court, in previous cases, particularly a case in which Mr. Van Vlerakam testified in Davis versus Mason County, stated that expert testimony on these issues is permissible. Also, we had... Also, unfortunately, our pathologist died before the trial. Why did you wait so long to designate the... As I read the record, it was seven months? We found out about it in August. The trial was in early March. I don't know if that's seven months, but it's close to it. But why did you wait so long? As I understood, the district court excluded your substituted expert on the grounds that you were just too late. That's right. And what's your explanation for why? Because once we found out that Mr. Buckland had died or Dr. Buckland had died, we did our... It takes a while to get an expert witness. You have to find one that will review the case. Then you have to send everything to them. Then they have to review it and come back with a positive decision. And it just took that long. And we wanted to get a good expert. That costs some money. So it took a little while to raise the money for that. We had to come up with a $5,000 retainer. They can say that's a big deal, but it is a big deal. Well, I understand that. But I guess the question is, why didn't you alert the district court, A, to the death of your expert, and then let the district court know that you were attempting to find a substitute and, if necessary, move for a continuance of the trial date? Because I did know that I had an expert that was going to testify positively until a few weeks before trial. I understand, having done plaintiff's work, why you want the right opinion. But that really doesn't answer my question as to why you simply didn't ask the district court for a continuance, because you hadn't been able to find the right expert to substitute. Well, I guess I could have asked the district court for a continuance, not knowing whether I'm going to get another expert who is going to be able to substitute in for Dr. Buckland and testify positively. So I might have been wasting everybody's time by saying that. If I filed the motion and went before the court and I said, I just need more time to look for another expert, maybe I should have done that. I just wonder whether the court would have even granted the continuance. The position right now on appeal is that you're asking us to overturn what I think is also discretionary ruling on the part of the district court in the face of a record where you didn't alert the district court to the fact that you had a problem, and the district court found that you waited too late to do it. And I'm trying to determine how that's error on the state of this record. I think all of these issues together constitute error, okay? Kind of a cumulative error. It's accumulation. If that was the only issue we had here, Your Honor, since he did allow us to use Dr. Buckland's deposition, although I didn't take the deposition, I probably wouldn't be here before you. I'm here before you because I feel all of these together, particularly allowing in the criminal records of Mr. Jones, led to an unfair trial and a failure of plaintiffs to be able to completely and fairly set forth their case. If I thought it was a fair trial, I wouldn't be here. If Dr. Weck was the only issue, I wouldn't be here either, okay? You want to save some time for rebuttal? Yes, thank you. All right. We'll hear from counsel for Mr. Devaney and the other defendants. Thank you, Your Honor. Tom Beatty for Defendant Devaney. And please, the Court, counsel, with all due respect, the appellants on the cold pages before this Court have tried to make a great deal of the claim difference in treatment by the trial judge of prior discipline of Devaney and criminal record history of Mr. Jones. In reality, they even go so far as to assert that this shows that he's biased and prejudiced. Now, in fact, the argument fails because when we look at it carefully, and as some of the questions have already pointed out, the same rule was applied. It was applied consistently, but, of course, different facts, different offers of evidence, different evidence actually put in, and different actions of the parties. Further, Mr. Beatty, I'm a little troubled under 608B with the manner in which the district court permitted the defense to introduce a lot of evidence of misconduct by Mr. Jones by simply wholesale admission of police reports. Can you address the program? Let's back up a little bit. The question was 571 and 572. There were some 40-odd arrests. The vast majority of those did not come in. The vast majority were not. They were specifically excluded. In fact, he says that the worst one came in. Actually, the one that we thought was singularly appropriate because, remember, we're talking about damages. And even arrests are important because if you're arrested, you're not earning money. You're not with your family. This is a wonderful relationship the family has. We'll go through that in a minute, perhaps, but that was the evidence that was brought in. Now, what occurred is the judge kept out a great deal, including the fact that they used this young man, the boy, they used him to commit a burglary. Now, that clearly comes in on the question of guidance and direction. He misses the guidance and direction of his father. Now, they did come in, first of all, plaintiffs themselves and the judge's order, the March 7th order, document number 175, specifically makes clear that a number of these items, the previous DUI, the domestic violence, were conceded by plaintiffs to be appropriate, and the judge ruled that they could come in. There were only two or three others that did come in out of all of this. What he did allow, excuse me, a couple of witnesses also confirmed those, Andrea Jones in her deposition. I believe Sheila Washington made some comments, and the boy, to a certain extent, made comments as well and confirmed some of those. So then what we have in, we do have police reports. Police reports generally can be business records. They are made by persons who have a duty to report accurately. There are some other statements in those. The vast majority of them are party admissions by a party opponent. Andrea Jones, the person that they stand in the feet of, Terry Jones, and even Terry Jones, Jr. So that's much of what was there. Additionally, you know, remember, if there is error, and the Court hit upon it earlier, if there is error in the admission of evidence, we still have to show for a reversal that it more probably than not affected the verdict. There was a limiting instruction. This is not offered for proof of conduct on November 21, 1998, the date of this tragedy. Secondly, when you look closely, what effort did defense counsel make? What use did we actually make of that in closing argument? And typically, you know, if we paraded it out, thrown it all over, never discussed it until we go through all the evidence and say, look, you didn't even get the damages. But when you get the damages, if you have to, this is stuff that you've got to look at. You know, we're not emphasizing it, but if you look at relationships, because Mr. Gelner is correct, when you talk about the relationship between the decedent and his family, and it's the family that's suing, and they're talking about loss of companionship and relationship, then unfortunately, this stuff, you've got to look at, because it does tell us something about the nature of the relationship, the fighting, the actual arrest. It tells us a lot, too. Remember, there was also evidence that he lost a job because of different arrests. And indeed, Mike Pry, his supervisor, who they put on to show that he was wonderful, that he had good temperament, didn't get into arguments, had no problems with any of the other employees, the son, all of them talking about he's mellow when he's under the influence, he isn't a violent drunk, all those kinds of things. This, unfortunately, is relevant to that, and even more important with Mr. Pry, he's saying he's going to have his job when he gets out. Well, we know that the very thing he's arrested for is a third offense DUI. That's important because that's one of the bases for a forced blood draw or requiring blood as opposed to something else, urine, whatever, we can require it under Nevada law. It's been sustained. Yet, plaintiff time and time again throughout says, admitting he didn't bring a false arrest claim, but he tries to raise the inference that there was, you know, not probable cause for the arrest, in the same way he tried to raise the inference that Mr. Jones was compliant. He says today that he was resistive. Well, for much of the trial, he's talking about Mr. Jones was compliant.  And Mr. Jones is not going to be compliant. So, I think it's important to remember that, when he was put on the arrest, and he only got upset and became noncompliant when he was bent over the particular bench that they were trying to use to get him controlled so he can take blood. In short, that's where we dealt with those particular documents. They weren't emphasized. Even if it's error, it's certainly not reversible error. Most of the information that's in there are admissions by party opponents, business records, and the arrests themselves are independently relevant, unlike what tried to do with Mr. Devaney. Mr. Devaney did not put his character in issue, did not raise his good character, didn't go through any of that. We didn't offer, for example ---- Well, there was a little ---- there was one part of his testimony where he was the good cop who had a vocational interest in counseling. That's as close as it ever got. There was never anything along the lines of missing his father's guidance and direction, good family man, the glue that kept the family together. These opening the door arguments always raise a question about whether there was an equal standard of how wide do we let that door get open and so on. And there's a whole issue here that needs to be looked at. And in this case, the answer is very clear. The judge made it very clear to plaintiff's counsel throughout, you're opening the door. You're getting into that area. I'm warning you now. You keep going into this information. You go further with this, then all of these authenticated documents are going to come in. That's what he told them and warned them again and again and again. Nevertheless, he still went ahead and brought in testimony that, you know, his father is very relaxed. He's mellow when intoxicated. The meanest his father ever was was when he yelled at somebody. He never hurt his wife or his child. Was an industrious worker. Personality is happy and smiling. Job isn't in jeopardy. Now, you know, we can open the door a crack or we can swing it wide open. And if we warn somebody that if you swing that door open, this is what's going to happen, that's exactly what happened. Interestingly enough, he tries to parlay that into an abuse of discretion issue. And, excuse me, he tries to parlay that into a bias issue. When in reality, you've got to look at the whole context, look at the whole record. And a court, a trial court, an appellate court, too, for that matter, has the right to control its proceedings. They have the right to be in charge. And in this, when you look at the entire record here, it's very clear this judge wasn't biased. He bent over backwards. There was improper contact by plaintiff's attorney with the defendant's designated expert, Dr. Bodden. Documents 71, 74, and 79 in the original record, those document numbers actually reflect that. He came, comes in on just before trial with a new witness with a new theory. Now, that was the real problem with Dr. Weck. It's a brand-new theory, positional asphyxia, which Mr. Gelmer specifically said, the only medical evidence is that there is no acute positional asphyxia in this case. But now, on March 7th, I think I was correct there, March 3rd, with a trial date of March 10th, we have a motion that says we want to bring this in. He now says that Dr. Weck was available for deposition before that time. There was no showing in the papers at the time of trial that showed that. The opening statement he comes off with has to be interrupted on a number of occasions because he's violating the orders already indicated. It culminates in a couple of the very negative and inappropriate comments he made about the trial judge's rulings. This is ridiculous. This is bullshit. You know, that ruling is bullshit. I heard the judge calls him on it. If anything, when you look at this, and closing remarks as well, God will be with you in the jury room. God is going to look over your shoulder. We're going to talk about it. We're addressing the individual jurors by name and talking about their individual military record, culminating with the reply brief in this court where we have articles that simply aren't in the record, inappropriate completely. Under those circumstances, this judge bent over backwards, allowed a lot of the questions to be asked again and again. Ultimately, no error, no abuse of discretion. And, in fact, some of the other issues Mr. Cannon will now talk about briefly. May it please the Court. Going back, I believe, to a question that was asked and to an issue that was addressed, specifically Mr. Van Blerkamp and why Judge Dawson did not let him testify. Counsel suggests that the reason that he didn't was because his testimony was going to go to the ultimate issue of fact and the judge didn't think that appropriate. Indeed, if you look at the record, starting on page 226 and going forward, you will see the issue first came up when Mr. Gelner said to Mr. Van Blerkamp, Sir, based upon everything you reviewed, the depositions, the statements, do you have an opinion with regard to whether or not excessive force was made or used here? Remember, at this time, the evidence is conflicting on what happened. We have five officers in that cell, two of which say I didn't see anything happen, three of which said I didn't specifically see any kick. We had two other corrections officers approximately 20 feet away in the doorway that said they did. The objection we made at that point was you, if given the phraseology of that particular question, you are asking Mr. Van Blerkamp to make a credibility determination. In other words, which one of those witnesses is telling the truth? And that is not appropriate expert testimony. It's not helpful to the jury. Indeed, that's the jury's function. They can perform that function without specific expertise. And that's further bore out if you look later, starting again at page 228 in the record, 232, 234 in the record. What you see there is this. When the proper question was asked, in other words, for example, assuming that what Mr. Devaney did was kick this man in the head, do you have an opinion as to whether or not that was proper training or excessive force? Judge Dawson allowed him to testify to that. He allowed him to testify with regard to whether or not there was proper training. He allowed him to testify as to whether or not there was a code of silence. The only time that Judge Dawson did not let him testify was when he was making credibility determinations. And those aren't appropriate under your rules as well as the rules from the other circuits that have addressed it. Now, turning to the prisoner restraint chair, again, I think you have to take this in the context that it was presented to the trial judge. Remember, summary judgment had been granted to the department with regard to the failure to discipline claim. Summary judgment had been granted with regard to the state claim for failure to train. Their own expert, Mr. Van Blerkamp, told the judge in his report, which I believe is Plaintiffs 116, this is a negligence issue. Has nothing to do with 1983 because we know under the Davis case, negligence cannot serve as a 1983 cause of action. This is a negligence issue. And Judge Dawson ruled, number one, we were entitled to discretionary immunity under NRS 41032, which is the state claim. And he also ruled that there was no discipline claim here under Section 1983 because the record showed that the only time that there was any claim of excessive force, the individual was disciplined. That was the status of the record. Mr. Devaney had committed two prior acts. He was disciplined both times. Mr. Devaney was disciplined for this act. That's the only in the record. He went through discovery. He could have put in other evidence to defeat this summary judgment. He didn't. So what do we have at the time that this particular he wants to put in the chair evidence? All we have left at that point is we have an issue on training. We know it's not a 1983 issue on training. Why? Because their expert told us so. And we have an excessive force claim. At that point, number one, it's not relevant under 401. Number two, it's prejudicial and time-consuming under 403. And number three, as Justice Tallman pointed out, it's a remedial measure. Now, he tries to say it's in the building. But let's face it. This is what happened. The facts are uncontroverted on this. Judge Dawson knew this. Here's what happened. Henry Hoogland, who, by the way, is not the policymaker for the department, yes, he is in charge of custodial issues in the jail. But those issues have to be approved ultimately by the sheriff, Jerry Keller. So he's not the ultimate policymaker under Purnumber and under the Jett case. He's not. Okay. That's number one. Number two, he says we're having problems with combative prisoners coming in. And I'm going to look around and see what's out there on the market to help us cut down on injuries, et cetera. What he finds in February of 98 is that there's this chair out there. He looks at it. He studies five or six different ones. And he ultimately orders one, which arrives in July. In July, they start putting together a policy. They don't finalize the policy. They put it together. It's there. The chair, at the time this incident happened and since its delivery to the jail, was in the basement under lock and key. Why? Because we hadn't trained on it. That's why. We hadn't had any training. Don't you think if we would have put it on the floor, he'd be here today saying, well, you didn't train on it. How can you put it on the floor? He can't have it both ways. So that's the circumstance of the chair. That's where the chair was. And it clearly is a subsequent remedial measure under 407 without any question. It's not relevant and prejudicial under 403. And under 401, clearly it's not relevant. And that is the points that I would like to make to the Court, unless any of you would have a specific question you'd like me to address. I don't think so, Mr. Kennedy. Thank you. Any further from the defense? I think we pretty much covered it. But realistically, if we get back to the alleged different treatment, different application, the discipline of David Devaney, as the trial judge specifically pointed out, that raises all kinds of other kinds of issues. And not only that, the discipline issue, the failure to discipline issue is already out of the case. Interestingly enough, of course, you're trying to prove failure to discipline by proving discipline. A little illogic there. But the Court specifically found, and we've cited it in the brief, we specifically found that what is being charged is different standards of proof, determinations, the right. You know, even the document itself says internally use only. You have a right to appeal. It can do all these kinds of things. It muddies everything. And the jury then, particularly being faced with an adjudication by somebody else, some sergeant, you're almost in the same position as you are with Van Burekam saying this is what you should rule, jury. That's inappropriate. Can any of those incidents be used for an attack on his credibility? Attack on his credibility? In some instances, at some stage, perhaps. But in here, understand, the Court specifically determined that they should not come in. The other incidents, by the way, were substantially dissimilar. Well, they're similar in the view of your opponent, probably because he didn't tell the truth. In one instance, what it said was, and if you look closely at it, you'll find that he initially said, I used capstan pepper spray from a particular location. A few minutes later, I was actually at this location. It was a different location. Yeah, that's it. But if we want to talk about that, you know, where do we end? How far do we go? Well, we do have more issues of confusion, misleading, and the judge made a specific ruling. It's supported by the record. Thank you. Thank you, Mr. Beatty. Mr. Gellar. Thank you, Your Honor. Mr. Beatty talking about different standards of proof. In all those incidents involving Mr. Devaney, he was brought up on charges. There was a hearing. He was found to have violated the rules at the situation. You're not suggesting that the court erred in not letting the jury know what an administrative determination had been, are you? I think we should have been allowed to bring those up in the cross-examination of Mr. Devaney as to his credibility. That's a different issue. As to his credibility. As I understood the argument. At a minimum. At a minimum. As I understood the argument, though, you wanted to introduce the result, the fact that he had in fact been, that the complaint was sustained and that he was disciplined for violating jail rules. That's a different issue than the one judge can be asked about whether or not you would be allowed to impeach Mr. Devaney by showing that he lied to an internal affairs investigator. Well, we wanted to use them under 404A. If we couldn't use them under 404A. And I see there's an argument, well, you can't use them under, I mean, 404B, that we should have been able to do it under 608A. And we weren't even allowed to do that. We could not mention it. The judge told me that he would sanction me if I mentioned it again. I mentioned it in the opening statement. And he said if I hear that again, you know, you're going to be sanctioned. So I couldn't bring it up under any way, shape or form. Well, at that stage of the trial, you hadn't called your first witness. And that does sound to me to be improper argument if the Court's granted a motion in limine. I don't know how you get away with that one, Mr. Carvin. Well, the problem was he made it quite clear that it was not to be resumed. Before Mr. Devaney's testimony, I resumed, made another motion that I want to bring these things up. And he said, no, they cannot be brought up. So I kept, you know, I kept at it to try to get these things in because I know you have to. And you have to make motions and you have to make objections. They're not going to be sustained on appeal. Now, as far as the information about Mr. Jones is concerned, these were arrest records. These were not conviction records. Some of them resulted in convictions. Most of them didn't. The most serious offenses that were seven to almost ten years old, he was not convicted of. The serious charge for grand theft auto, attempted burglary, excuse me, attempted robbery, battery to a police officer, he was never convicted of any of those. And these reports, all they are is hearsay. They're not admissions. They're not admissions at all. There's no statement from Mr. Jones. There might be some statements in there by a police officer, this is what he said, but there's also statements by cab drivers as to what they said, by the police officers as to what they said. And it was inappropriate to let them in. This court ‑‑ Mr. Galliner, you're out of time. Okay. Thank you very much. The case just argued is submitted. We'll take a short recess and then we'll hear argument in Philippine National Bank versus the United States District Court. All rise. This court will continue to the next court in 15 minutes. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.
judges: Goodwin, Canby, Tallman